UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
IRENA PEST,

**MEMORANDUM
AND ORDER**

                        Plaintiff,              16 CV 1523 (CLP)

     - against -

BRIDAL WORKS OF NEW YORK, INC.
and ALEKSANDRA BACH,

                      Defendants.
---------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

      On March 29, 2016, Irena Pest ("plaintiff") filed this action against Bridal Works of New

York Inc. and Aleksandra Bach (collectively, "defendants"), seeking unpaid overtime wages,

liquidated damages, and attorneys' fees and costs, under the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL") §§ 650 et seq.  The Complaint

also alleges violations of the requirements to provide wage notices and accurate wage statements

under the NYLL and New York Wage Theft Prevention Act.  On January 23, 2017, the parties

consented to proceed before the undersigned for all further proceedings.

      On March 17, 2017, defendants filed a motion seeking summary judgment on all of

plaintiff's claims.  On April 5, 2017, plaintiff filed her response in opposition to defendants'

summary judgment motion.

      For the reasons set forth below, the Court denies defendants' motion for summary

judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action against Bridal Works of New York, Inc., a bridal garment manufacturer ("Bridal Works"), and individual defendant Aleksandra Bach, seeking damages for claims of unpaid wages and wage notice violations.  (Compl.[1] ¶ 26).  Plaintiff claims that during the period from June 2000 to May 2014, she was employed by defendants as a seamstress, "altering, fixing and creating bridal garments."  (Id. ¶¶ 1, 10).  Plaintiff alleges that during her employment, Aleksandra Bach was the owner and CEO of Bridal Works and "actively participated in determining employee compensation."  (Id. ¶¶ 25-27).

There is no dispute that defendant Bridal Works is a bridal garment manufacturer that was incorporated in New York in or around June 2000.  (Defs.' 56.1 Stmnt[2] ¶¶ 1-2; Pl.'s 56.1 Stmnt[3] ¶¶ 1-2).  Prior to 2000, Bridal Works was owned by Marek Kwoka and operated under the name "Philmar."  (Defs.' 56.1 Stmnt ¶ 3; Pl.'s 56.1 Stmnt ¶ 3).  Defendants contend that defendant Bach was hired by Philmar in or around 1993 as a pieceworker, and her employment ended in or around 1995 because Philmar did not have enough work.  (Defs.' 56.1 Stmnt ¶¶ 5, 6; Bach Decl.[4] ¶ 7).  Defendants claim that Bach had no ownership interest or managerial authority at Philmar.  (Defs.' 56.1 Stmnt ¶ 7; Bach Decl. ¶ 8).

---

[1]Citations to "Compl." refer to the Complaint, filed on March 29, 2016.

[2]Citations to "Defs.' 56.1 Stmnt" refer to Defendants' Statement of Material Facts, dated March 17, 2017.

[3]Citations to "Pl.'s 56.1 Stmnt" refer to Plaintiff's Responses and Objections to Defendants' Rule 56.1 Statement, filed April 5, 2017.

[4]Citations to "Bach Decl." refer to the Declaration of Aleksandra Bach, dated March 16, 2017.

In approximately June 2000, Bach's husband, Jan Marek Bach, who had been a manager at Philmar, purchased the business and began operating it as "Bridal Works of New York." (Defs.' 56.1 Stmnt ¶ 8).  Jan Marek Bach died in or around April 2004, and Alexsandra Bach became the owner of Bridal Works.  (Id. ¶ 9; Pl.'s 56.1 Stmnt ¶ 9).  Defendant Bach claims that until her husband's death, she was not involved in Bridal Works as an employee, manager, supervisor or owner.  (Defs.' 56.1 Stmnt ¶ 10; Bach Decl. ¶ 11).

It is undisputed that plaintiff Pest was employed by Philmar from approximately 1995 until June 2000 and then by Bridal Works from June 2000 until May 2014.  (Defs.' 56.1 Stmnt ¶ 11; Pl.'s 56.1 Stmnt ¶ 11).  Defendants contend that as a Bridal Works employee, plaintiff sewed bridal garments at the factory in Brooklyn, N.Y. and that she was a "pieceworker."  (Defs.' 56.1 Stmnt ¶¶ 11, 12).  Plaintiff admits that she sewed bridal garments, but claims that she also performed a half hour of cleanup and maintenance work every day, including replenishing fibers and cleaning her machine, which was not compensated by her piecework wages.  (Pl.'s 56.1 Stmnt ¶¶ 11(a), 12(a)).

Defendants contend that plaintiff was paid weekly based on tags that were attached to each garment denoting the amount plaintiff would receive for sewing that garment.  (Defs.' 56.1 Stmnt ¶¶ 14, 15; Pl.'s 56.1 Stmnt ¶¶ 14, 15).  Defendants claim that the amount of wages plaintiff was paid was equal to the amounts set out on the tags affixed to the items she had sewn during the applicable period and that with each week's payment, defendants provided her with a statement showing, among other things, the method of calculating her wages, her gross wages, withholdings and deductions, and net wages.  (Defs.' 56.1 Stmnt ¶ 16; Bach Decl. ¶ 17; Pl.'s 56.1 Stmnt ¶¶ 15, 16).  Defendants contend that regardless of how many hours plaintiff worked,

3

her piecework wages covered her hours spent during both non-overtime and overtime hours, and covered any other tasks, such as cleaning her machine and work area.  (Defs.' 56.1 Stmnt ¶¶ 17-18, 19).

Plaintiff disputes that her piecework pay compensated her for all of her work and she denies that she was compensated for the approximately 30 minutes of daily clean-up and maintenance work.  (Pl.'s 56.1 Stmnt ¶ 15(a)).  She also disputes that she received proper paystubs and earnings statements.  (Id. ¶ 16).  Instead, she claims that while the earnings statements listed her name, Bridal Works' name and address (but no phone number), she disputes that the word "piecework" adequately explains how her wages were calculated because the pay rate heading was left blank and the paystubs falsely indicated that her weekly hours were "40:00."  (Id.)

The parties dispute how many hours plaintiff worked per week.  (Compare Pl.'s 56.1 Stmnt ¶ 20 with Defs.' 56.1 Stmnt ¶ 20).  Defendants allege that she worked generally Monday through Friday from either 7:00 a.m. to 3:30 p.m. with a half-hour unpaid lunch break or 9:00 a.m. to 5:30 p.m. with a half-hour unpaid lunch break.  (Defs.' 56.1 Stmnt ¶ 20).  They contend that she did not work more than eight hours a day or more than 40 hours per week.  (Id. ¶ 21).  According to defendants, there was a time clock in the factory and the pieceworkers and hourly workers would record the time that they worked each day by punching their own time cards when they arrived at the beginning of the shift and punching out their own time cards at the end of each shift.  (Id. ¶¶ 27, 32).  The time cards were stored in a fixture on the wall and on Monday mornings, new time cards were placed there and then collected at the end of the week.  (Id. ¶¶ 28, 31).  Defendants claim that next to the fixture where the time cards were kept, there were posters

4

explaining the employees' FLSA and NYLL rights in English.  (Id. ¶ 29).  Defendants also

contend that plaintiff did not work when the factory was closed and that the factory did not

operate on Saturdays or Sundays except for a few occasions except when a weekday shift was

rescheduled because of a holiday.  (Id. ¶¶ 22, 23).

Plaintiff disputes defendants' contention that she never worked more than 40 hours a

week.  Instead, she claims that she would arrive at 7:00 a.m., Monday through Friday, to begin

her shift, and she would work until 5:30 p.m.  (Pl.'s 56.1 Stmnt ¶¶ 20(a), 21(b)).  She claims that

if she clocked in at 7:00 a.m., she would be required to clock out, or a foreman would stamp her

timecard, at 3:30 p.m. even though she would continue to work until 5:30 p.m.  (Id. ¶¶ 20(a),

32(a)).  On some days, if the foreman had not done so, she would be directed to clock in at 9:00

a.m., instead of 7:00 a.m., and then she would clock out at 5:30 p.m. when the factory was

closing.  (Id.)  Plaintiff claims that she was told by defendants that she could only punch 40 hours

on the time cards even though she worked an extra 2 hours per day Monday through Friday.  (Id.

¶¶ 20(a), 21(a)).  Plaintiff notes that her wage statements never included the extra two hours per

day that she worked, nor did they include the half hour or so that she spent on maintenance or

clean-up work.  (Id. ¶ 20(a)).

Plaintiff also alleges that 90% of the time, she worked Saturdays from 7:00 a.m. to 2:30

p.m. and that other workers were present at the factory.  (Id. ¶¶ 21(b), 22(a)).  She disputes

defendants' assertion that the factory was not generally open on Saturdays, except for a holiday

observance, but she concedes that the factory was rarely open on Sundays.  (Id.)  Plaintiff

concedes that the time clock was used to record some of the time she worked, but she denies that

the employees were permitted to record all of their time worked on the time clock.  (Pl.'s 56.1

5

Stmnt ¶ 27; Pest Decl.[5] ¶¶ 28, 40).  She also concedes that the time cards were stored on the wall but claims that the foreman confiscated them on Friday afternoon so that they were inaccessible until Monday morning.  (Pl.'s 56.1 Stmnt ¶ 28).  As a consequence, the time cards were unavailable on Saturdays.  (Id. ¶ 32(b)).  Plaintiff argues that this supports her claim that she was not allowed to record more than eight hours a day and that the foreman would clock her out after she had worked the eight hours.  (Id. ¶ 32(a)).

With respect to plaintiff's claim that she worked Saturdays, defendants contend that although plaintiff would occasionally visit the factory on Saturdays when Bridal Works' bookkeeper, Edyta Makowska, would go in to do administrative work, plaintiff did not do any work for defendants at that time.  (Defs.' 56.1 Stmnt ¶¶ 24, 26).  Defendants also admit that there were times when other employees, such as Robert Gremplewski, a manager, would go to the factory while his son attended school nearby.  (Id. ¶ 25).  Plaintiff contends that Gremplewski testified that he was actually at the company's premises on more than 100 Saturdays during his time there.  (Pl.'s 56.1 Stmnt ¶ 25(a)).  Moreover, plaintiff claims that she worked 6 days a week at the factory beginning in 1995 and that she has a photo with a timestamp from Saturday, April 22, 1995 that shows she was there.  (Id. ¶ 26(a); Pest Decl., Ex. 1).  She claims that she worked approximately 90% of the Saturdays during the year and names other employees who were there as well, including Beata Nowak, Bozena Usiatynska, Elzbieta Zych, Irena LNU, Bogusia LNU, Maria LNU, Ania LNU, and Malgosia LNU.  (Id. ¶ 26(b)).

Plaintiff does not dispute that there were at least two Saturdays in 2013 when plaintiff did not work because she was given New Year's Eve and New Year's Day off, and she did not work

---

[5]Citations to "Pest Decl." refer to the Declaration of Irena Pest, filed on April 5, 2017.

on Saturday, March 2, 2013 because she had injured her thumb the prior day.  (Id. ¶ 35(c)).

Defendants claim that as a result of this injury, plaintiff filed a Notice and Proof of Claim for

Disability Benefits, on which it was stated that plaintiff worked either five or three days per week

for eight consecutive weeks during the period for which she alleges defendants owe her overtime

wages.  (Defs.' 56.1 Stmnt ¶ 35).  Defendants contend that plaintiff did not work any Saturday

during the eight consecutive weeks for which she stated she was on disability.  (Id. ¶ 36).

Plaintiff contends that the form filled out by defendants' agent, Edyta Makowska, was written in

English, and plaintiff never received a translation or explanation of the form before signing it.

(Pl.'s 56.1 Stmnt ¶¶ 35-36).  She claims that the only portions of the form that she confirmed

were her address and the date of the accident when she suffered the relevant injury, March 1,

2013.  (Pest Decl. ¶ 59).

Based on the company's alleged cap on recorded working hours, plaintiff claims that her

paystubs falsely represented that she worked only 40 hours per week.  (Pest Decl. ¶ 25).  Plaintiff

claims that her weekly paystubs never contained a breakdown of how her pay had been

calculated.  (Compl. ¶ 22).  Plaintiff alleges that defendant Aleksandra Bach failed to "post

notices explaining wage and hour requirements" (id. ¶ 48), and in her Declaration, plaintiff

claims that although defendant displayed posters "near the timecards," the posters were written in

English, which plaintiff says she neither reads nor speaks.  (Pest Decl. ¶ 71).  Therefore, she

could not understand the posters.  (Id.)  Plaintiff notes that the posters likely had something to do

with federal minimum wages and overtime rules, but she questions whether there is any proof of

the content of the notices, when they were posted, whether they were ever updated.  (Pl.'s 56.1

Stmt ¶ 29).  Plaintiff states that the posters were in English even though the majority of the

7

employees were Polish-speaking, and in fact, the garment tags were written in Polish.  (Id. ¶¶ 29(a), (b)).  According to plaintiff, neither the posters nor the disability form that the bookkeeper, Edyta Makowska, filled out on her behalf on March 8, 2013, was ever translated into Polish. (Pest Decl. ¶¶ 56-61).  As such, plaintiff claims that she did not have an understanding of the subject matter of either the disability form of March 2013 or the posters in the factory.  (Id.) Defendants claim that plaintiff did not pay attention to the contents of the wage-and-hour posters, which were displayed on the wall around where the employees' time cards were stored, and did not ask anyone who read English to explain them to her.  (Defs.' 56.1 Stmnt ¶¶  29-30).

On March 17, 2017, defendants filed a motion seeking summary judgment on all of plaintiff's claims, raising several arguments: 1) there is no genuine dispute of material fact as to plaintiff's claim for overtime wages; 2) plaintiff's claims for damages during the period before March 29, 2010 are barred by the statute of limitations, and there should be no equitable tolling; 3) defendant Aleksandra Bach is not individually liable for plaintiff's pre-2004 claims; 4) plaintiff's claims for overtime wages should be calculated pursuant to 29 C.F.R. § 118.111; 5) plaintiff cannot recover liquidated damages under both the FLSA and NYLL for the same period of time; and 6) plaintiff's claims under NYLL §§ 195(1)(a), 195(3) must be dismissed as a matter of law.  (Defs.' Mem.[6] at 2).

On April 5, 2017, plaintiff filed a response in opposition to defendants' motion for summary judgment, claiming that: 1) plaintiff's testimony is sufficient to defeat summary judgment; 2) plaintiff's claims should be equitably tolled; 3) plaintiff agrees to waive her pre-2004

---

[6]Citations to "Defs.' Mem." refer to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, filed on March 17, 2017.

claims against defendant Aleksandra Bach; 4) defendants' method of calculating overtime wages owed is incorrect; 5) plaintiff agrees that cumulative liquidated damages are no longer available; and 6) plaintiff agrees that her NYLL § 195(1) claim is subject to dismissal, but argues that her NYLL § 195(3) claim is not subject to dismissal.  (Pl.'s Mem.[7] at i).  On April 24, 2017, defendants filed their reply in support of their motion seeking summary judgment.

<u>DISCUSSION</u>

I.  <u>Motion for Summary Judgment - Standards</u>

It is well-settled that a party moving for summary judgment has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is therefore entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.</u>, 599 F.3d 102, 114 (2d Cir. 2010).  Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present their case to the jury, <u>see</u> <u>Egelston v. State Univ. Coll. at Geneseo</u>, 535 F.2d 752, 754 (2d Cir. 1976); <u>Gibralter v. City of New York</u>, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that "[s]ummary judgment is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial."  <u>Auletta v. Tully</u>, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)) (alteration in original), <u>aff'd</u>, 732 F.2d 142 (2d Cir. 1984).  Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  <u>Anderson v.</u>

---

[7]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed on April 5, 2017.

Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

Once the moving party discharges its burden of proof, the party opposing summary judgment has the burden of setting forth "specific facts showing that there is a genuine issue for trial,' wherein 'a reasonable jury could return a verdict for the non-moving party." International Bus. Machs. Corp. v. BGC Partners, Inc., No. 10 CV 128, 2013 WL 1775367, at *4 (S.D.N.Y. Apr. 25, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (internal quotation marks and citations omitted). Despite the fact that "allegations of the party defending against the summary judgment motion" must be accepted as true, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citations omitted). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011), cert. denied, 132 S. Ct. 2439 (2012).

Federal Rule of Civil Procedure 56 provides that, in moving for summary judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a

10

[summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Rule 56's "requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)).  While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment.  Fed. R. Civ. P. 56(c)(3).

## II.  Plaintiff's Burden of Proof

Neither party disputes the fact that plaintiff was employed as a pieceworker at Bridal Works, although plaintiff claims that she performed other tasks not compensated through her piecework wages.  (Pl.'s 56.1 Stmnt ¶¶ 11, 11(a); Defs.' Mem. at 5).  The parties do disagree on whether plaintiff regularly worked more than 40 hours a week while she was employed by defendants.  Defendants argue that there is no genuine dispute as to any material fact with respect to plaintiff's claim for overtime wages because plaintiff has failed to meet her initial burden of proving that she performed overtime work "as a matter of just and reasonable inference."  (Defs.' Mem. at 7 (citing Gayle v. Harry's Nurses Registry, Inc. No. 07 CV 4672, 2012 WL 4174401, at *3 (E.D.N.Y. Sept. 18, 2012)).  Defendants contend that plaintiff has only offered general, uncorroborated testimony in support of her overtime claims, which is insufficient to meet her burden in this circuit.  (Id. at 8-9 (citing Seever v. Carrols Corp., 528 F. Supp. 2d 159 (W.D.N.Y. 2007))).  Plaintiff responds that her statements in both her affidavit and deposition are specific and

consistent and that she has therefore met her burden of proving that she performed overtime work for which she was not compensated.  (Pl.'s Mem. at 6).

Both the FLSA and the NYLL provide a burden-shifting framework for proving wage violations.  Under the FLSA, an employee may meet his or her burden of proof by producing "sufficient evidence from which violations of [the FLSA] and the amount of an award may be reasonably inferred."  Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997).  If an employee offers such evidence, an employer must then "come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."  Yu Y. Ho v. Sim Enterps., Inc., No. 11 CV 2855, 2014 WL 1998237, at *14 (S.D.N.Y. May 14, 2014) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688-89 (1946)).  If an employer fails to present such evidence, the court may enter judgment in the employee's favor, using the employee's recollection to determine damages, "even though the result be only approximate."  Reich v. South New Eng. Telecomms. Corp., 121 F.3d at 67.

Moreover, it is the responsibility of the employer, not the employee, to maintain employment records under Section 11(c) of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687) (holding that "the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer, who has the duty for their maintenance under section 11(c) of the FLSA").  Where the defendant has failed to maintain proper records, the burden of proving that plaintiff was properly paid shifts to the defendant.  See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 439748, *6 (E.D.N.Y. Aug. 24,

2012); Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011) (holding that "it is important to recognize that an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable").

New York law similarly provides that where an employer fails "to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining worker was paid wages, benefits and wage supplements."  N.Y. Lab. L. §§ 196–a, 195(4) (requiring employers to "establish, maintain, and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee"); Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007) (holding that "[l]ike the FLSA, 'in the absence of adequate records,' New York law also 'places the burden on the employer to show the employee was properly compensated.' As the burden shift under New York law places on the employer the 'burden of showing by a preponderance of the evidence that [the] plaintiff was properly paid for the hours he worked,' if the employer is unable to meet its burden under the FLSA 'to 'negative the reasonableness of the inference' arising from the employee's evidence of his hours and wages, then a fortiori [the employer] could not satisfy the more demanding burden' under New York law") (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687 (1946)).

Defendants contend that plaintiff's allegations that she was not paid for her overtime work are general and uncorroborated, which they argue, under Seever v. Carrols Corp., is not enough to survive a motion for summary judgment.  (Defs.' Mem. at 8 (citing Seever v. Carrols Corp., 528 F. Supp. 2d at 169)).  Plaintiffs argue that defendants' reliance on Seever v. Carrols Corp. is misplaced because the Second Circuit has since rejected that court's holding that disputes regarding

13

the sufficiency of a plaintiff's testimony are appropriate to resolve at the summary judgment stage. (Pl.'s Mem. at 11(citing Keubel v. Black & Decker, Inc., 643 F.3d 352, 361-64 (2d Cir. 2011)).

In Seever v. Carrols Corp., the court held that, where plaintiffs were responsible for filling out their own time sheets, and where the employer was not in a position to control and alter those records, any inaccuracies in the records would be due solely to plaintiffs' failures to accurately report their hours worked and plaintiffs would not be able to rebut defendants' inference that they were properly paid for hours worked merely by satisfying the relaxed Anderson v. Mt. Clemens Pottery Co. standard of proof.  528 F. Supp. 2d at 172 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687)).  The court granted summary judgment to defendants, holding that plaintiffs' general and "uncorroborated" testimony did not support their claim for damages under this heightened standard.  Id. at 170.

In  Keubel v. Black & Decker, Inc., the Second Circuit explicitly disagreed with the district court's approach in Seever, holding that even where a plaintiff was responsible for filling out their own timesheets, they were still entitled to invoke the Anderson standard to meet their burden at the summary judgment stage, holding that even if their testimony seemed uncorroborated such that "ultimately a factfinder might or might not credit this testimony, that is a determination for trial, not summary judgment."  643 F.3d 352, 363 (2d Cir. 2011) (citing Seever v. Carrols Corp., 528 F.Supp.2d at 159).

Here, defendants argue that plaintiff's testimony is uncorroborated by other testimonial and documentary evidence and that plaintiff therefore fails to meet the burden as outlined in Seever. (Defs.' Mem. at 13-14).  Defendants point to plaintiff's statements in her deposition that she could not recall how often or when she began work after 7:00 a.m. or ended work before 5:30 p.m. (id. at

14

14; Korder Decl.,[8] Ex. E; Pest Dep.[9] at 23), even though in her Complaint, she alleged that she

regularly worked from 7:00 a.m. to 5:00 p.m.  (Compl. ¶ 12).  Defendants also claim that her

testimony that the policy of clocking in and out was announced during the last few years of

plaintiff's employment (id. at 15; Pest Dep. at 29), is inconsistent with the allegation she made in

her Complaint that she was required to clock in and out of work throughout the period of her

employment.  (Id. ¶¶ 13-14).  Defendants also point to the disability form that plaintiff filed during

her employment with defendants, which represents that plaintiff did not work any Saturdays for the

eight week period for which she claimed disability benefits.  They argue that during her deposition,

plaintiff was not able to reconcile the statements on the form with her allegation that she regularly

worked Saturdays throughout her employment.  (Defs.' Mem. at 14; Pest Dep., Ex. D).

Plaintiff argues that, on the whole, her testimony was "remarkably consistent."  (Pl.'s Mem.

at 10).  Plaintiff points to her statement in her Declaration that she worked 57 hours for

approximately 90% of the weeks she worked and for the remaining time, she worked only 50

hours, meaning she did not work Saturdays for certain weeks during her employment.  (Id.; Pest

Decl. ¶ 66).

Plaintiff argues that her allegations regarding her hours worked differ from the amount of

hours listed on her timecards because defendants confiscated her timecards on Friday, so that she

could not report the hours worked on Saturday.  (Id.)  She also contends that the foreperson would

clock her in at 9:00 a.m. and clock her out at 5:30 p.m., even if she worked earlier or later than

---

[8]Citations to "Korder Decl." refer to the Declaration of Jacob Korder, counsel for
defendants, filed on March 17, 2017.

[9]Citations to "Pest Dep." refer to the deposition of plaintiff Irena Pest on September 20,
2016, attached as Exhibit E to the Declaration of Jacob Korder.

those times.  (Id.)  In support of her claim that she worked on Saturday, she also provided a

photograph showing her at the factory on April 22, 1995, a Saturday.  (Pest Decl., Ex. 1).  Plaintiff

testified during her deposition that for about 40 percent of the time that she worked on Saturdays,

there was a foreperson who was also present with her, as well as other ladies who were working on

dresses at the factory.  (Pest Dep. at 26).  As for the disability form, plaintiff argues that the form

was filled out by defendants' bookkeeper, and that the period covered by the form includes days

that contradict defendants' own timecards; it includes holidays such as New Year's Eve and New

Year's Day, and includes a workweek in which plaintiff was injured on Friday and could not work

on Saturday.  (Pl.'s Mem. at 11-12).

 Defendants and several other employees dispute plaintiffs' allegations regarding how her

time cards were punched, whether employees were permitted to work on Saturdays, and whether

employees often worked more than 40 hours.  Defendants claim that neither defendant Bach nor

any other foreperson told any employee to clock in after the beginning of a shift or before the end

of a shift.  (Defs.' 56.1 Stmnt ¶ 33).  Defendants also deny that defendant Bach or any manager or

foreman clocked employees in or out and took their time cards for the week.  (Id. ¶ 34).

Defendants simultaneously claim that plaintiff did not work more than 40 hours per week, although

her schedule varied (id. ¶ 21), but that to the extent that plaintiff did work greater than 40 hours per

week, her piecework wages covered piecework performed during both overtime and non-overtime

hours.  (Id. ¶ 18).

 Defendant Bach testified during her deposition that she never directed a foreperson to

punch out an employee after the employee had worked eight hours and that foremen never worked

16

on Saturdays.  (Bach Dep.[10] at 50).  Defendant Bach also testified that "no one ever worked overtime" and that therefore, there was no need to pay any employee more than the amount listed on the tickets that were attached to each garment.  (Id. at 108).

Bridal Works' current production manager, Robert Gremplewski, testified that he could not say with absolute certainty whether employees worked on Saturdays when he was not at the company, but that even if employees were at the company on a Saturday, "these individuals shouldn't have been working there because anyways they wouldn't be able to get access. They didn't have the keys."  (Gremplewski Dep.[11] at 32).  Mr. Grempleweski also testified that he could not say with certainty whether plaintiff ever worked more than 40 hours in one week.  (Id. at 41).

Jolanta Leja, who worked as a foreperson at Bridal Works from approximately 2001 to 2010, testified that she worked once or twice on Saturdays in 2001 and 2002, but after those years, "there were no working Saturdays."  (Leja Dep.[12] at 19-20).  Leja testified that she supervised all workers at Bridal Works during her time as foreperson and that under her supervision, each employee punched out his or her own timecard.  (Id. at 38).  Leja also testified that plaintiff could not have worked on Saturdays, other than the two Saturdays Leja had mentioned.  (Id. at 39-40).  However, Leja also testified that plaintiff might have been working on the two Saturdays when she

---

[10]Citations to "Bach Dep." refer to the Deposition of Aleksandra Bach on October 27, 2016, attached as Exhibit F to the Declaration of Jacob Korder.

[11]Citations to "Gremplewski Dep." refer to the Deposition of Robert Gremplewski on November 17, 2016, attached as Exhibit H to the Declaration of Jacob Korder.

[12]Citations to "Leja Dep." refers to the Deposition of Jolanta Leja on December 15, 2016, attached as Exhibit I to the Declaration of Jacob Korder.

herself had been at Bridal Works because they were "making up something."[13]  (Id. at 40).

The Court finds that there is a genuine issue of material fact on the issues of whether plaintiff qualifies as a piecework employee, whether plaintiff worked more than 40 hours per week, and if plaintiff did work more than 40 hours per week, the amount of hours of overtime she worked.  Although defendants have provided copies of paystubs and timecards in their papers filed in support of the motion, the earliest of the paystubs covers the period from March 28, 2010 through April 1, 2010.  (Pest Dep., Ex. B).  These paystubs show different weekly gross pay amounts, but represent that gross pay is for a quantity of "40."  For instance, plaintiff's gross pay was reported as:  $664.90 for the pay period between August 8, 2010 and August 14, 2010; $624.81 for the pay period between November 14, 2010 to November 20, 2010, and $704.00 for the pay period between December 12, 2010 and December 18, 2010.  (Id.)  No paystubs have been provided for plaintiff's employment at Bridal Works before 2010.  As for the amount listed under "QTY," which the Court interprets to mean "quantity," in plaintiff's paystubs, plaintiff and defendants offer different accounts as to what the number under the term represents.  Defendant Bach testified during her deposition that the amount listed under "QTY" in plaintiff's pay stubs indicated 40 hours of work.  (Bach Dep. at 105).  However, plaintiff's response to defendants' interrogatories included a chart in which plaintiff lists under the "# of pieces produced" the number "40" for nearly every week for which she received a paycheck, and in a few instances, lists a number below 40.  (Pl.'s Interr. Resp.[14] at 6).

---

[13]Defendants explain in their Memorandum that they might have worked certain Saturdays to make up weekdays "when a weekday shift was rescheduled to a Saturday because of the observance of a holiday."  (Defs.' Mem. at 10).

[14]Citations to "Pl.'s Interr. Resp." refer to Plaintiff's Responses to Defendants' First Set of Interrogatories, dated July 22, 2016.

Moreover, although defendant Bach testified that her foremen never worked on Saturdays (Bach Dep. at 50), foreperson Leja testified that she did work some Saturdays when she began her employment at Bridal Works (Leja Dep. at 19-20), and the manager, Gremplewski, testified that he "frequently" entered the building on Saturdays  (Gremplewski Dep. at 25), worked Saturdays approximately two to three times during his entire time at Bridal Works (id. at 21), and that other employees were in the building on the Saturdays he worked.  (Id. at 22-23).  Defendants have not provided any timecards reflecting these occasional Saturday work days.

Even if plaintiff's allegations are inconsistent or lack specificity as to certain weeks during her employment when she did not work Saturdays, or certain weeks when she worked fewer than 57 hours (Defs.' Mem. at 16), it is not appropriate for the Court to determine, at this stage, whether plaintiff's testimony is credible.  Dervisholli v. Triangle Gen. Contractors, Inc., No. 12 CV 4412, 2016 WL 6902135, at *4 (E.D.N.Y. Nov. 22, 2016) (holding that even though "[p]laintiff's allegations are vague and his deposition testimony is unconvincing . . . plaintiffs['] credibility, while vulnerable to attack, is an issue for trial, not summary judgment"); Juarez v. Wheels Pizza Inc., No. 13 CV261, 2015 WL 3971732, at *3 (S.D.N.Y. June 30, 2015) (holding that "[w]hile it is true that corroborating evidence is lacking for many of [plaintiff's] claims and that some of them strain credulity, the alleged inconsistencies and what defendants characterize as ludicrous statements do not cast on his claims the degree of doubt necessary to justify summary judgment on the issue of credibility alone").

Plaintiff has provided sufficient facts to support the amount and extent of her uncompensated work as a matter of "just and reasonable inference" for purposes of this summary judgment motion.  Her recollection that she worked approximately 57 hours per week, that she

regularly worked Saturdays throughout her employment, and that any inconsistencies between her recollection of her hours worked and the timecards are due to company practices by which the foreperson would clock her in and out, are sufficient to raise issues of fact that cannot be decided on this motion for summary judgment.  (Pest Decl. ¶¶ 33-36; Pest Dep. at 35).

The Court therefore finds that at this stage in the proceedings, plaintiff has met her burden sufficient to rebut defendants' argument that she was properly paid for her time worked and that there are significant disputes of material fact as to how many hours plaintiff worked on average and whether she was properly compensated for her hours worked.

III.  Overtime Exemption for Piecework Employees

Defendants argue that even if the Court denies summary judgment on the issue of whether plaintiff satisfied her burden of showing she has worked overtime, the Court should decide the method of calculating damages as a matter of law.  (Defs.' Mem. at 19 (citing Onque v. Cox Commc'ns Las Vegas, Inc., No. 204 CV 588, 2006 WL 2707466, at *4 (D. Nev. Sept. 19, 2006)).  The parties disagree on several issues:  1) if plaintiff is found to have worked hours in excess of 40 per week, what would her "regular rate of pay" be; and 2) whether any overtime owed would be based on the total amount of hours she worked during the workweek or only on the first 40 hours she worked in a week.  Plaintiff argues that under 29 C.F.R. § 778.318(c), unless an employer and employee have agreed that the piece-rate will compensate the employee for all hours worked, there is a presumption that the piece-rate employee's weekly salary only covers the first 40 hours of work and therefore, the regular rate of the pieceworker is determined by dividing the total piecework earnings by 40 hours.  (Pl.'s Mem. at 16).  Plaintiff argues that she is owed a full one and one-half times her regular rate in overtime wages.  (Id. at 16-17).

20

Defendants argue that under 19 C.F.R. § 778.111, the regular hourly rate for a piece-rate employee is determined by dividing plaintiff's total earnings by the total hours worked.  Therefore, plaintiff would only be owed overtime wages in the amount of half of her regular rate of pay for hours worked above 40 hours in a week.  (Defs.' Mem. at 23).

A.  Regular Rate of Pay - Legal Standard

The "correct formula for calculating overtime pay is a legal issue for the Court to decide." Ayers v. SGS Control Servs., Inc., No. 03 CV 9078, 2007 WL 646326, at *8 (S.D.N.Y. Feb. 27, 2007) (citing Onque v. Cox Comm's Las Vegas, 2006 WL 2707466, at *3)).  Although the FLSA "does not require employers to compensate employees on an hourly rate basis, their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek."  29 C.F.R. § 778.109.  Section 207(a)(1) of the FLSA requires an employer to pay an employee overtime pay in the amount of one and one-half times their regular rate for hours worked in excess of 40 hours.  29 U.S.C. § 207(a)(1).  Under Section 207(i), "No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title,[15]

_____

[15]Federal regulations also make clear that "[i]f the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate."  29 C.F.R. § 778.107.  New York law also requires that

and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."  29 U.S.C. § 207(i).

When an employee is paid on a commission or piece-by-piece basis, courts must determine the employee's regular rate of pay since "[t]he regular rate of pay at which the employee is employed may in no event be less than the statutory minimum."  29 C.F.R. § 778.107.  Under the FLSA, if an employee is not paid on an hourly basis, then "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109. Under New York law, "[t]he term regular rate shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employees' total earnings."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16.

Under both federal and New York law, an employee is entitled to overtime pay, or one and one-half times the employee's regular rate, for hours worked in excess of 40 hours in one work week.  29 U.S.C. § 207(a)(2)(C); 12 N.Y.C.R.R. § 142-3.2.  Under 29 C.F.R. § 778.111(a), piece-rate earnings must be converted to an hourly rate in order to determine whether the earnings comply with the overtime pay requirements set by federal and state laws:

> When an employee is employed on a piece-rate basis, the regular

---

employees be compensated for overtime at "one and one-half times the employer's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA.  12 N.Y.C.R.R. § 142-2.2.

hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

B.  <u>Analysis</u>

 In this case, plaintiff cites to <u>Said v. SBS Electronics, Inc.</u> in support of her argument that, unless an employer and employee agree that a weekly salary will include overtime hours at a premium rate, courts have found that a weekly salary covers only the first 40 hours of the workweek.  08 CV 3067, 2010 WL 1265186, at *7 (E.D.N.Y. Feb. 24, 2010).

In <u>Said v. SBS Electronics, Inc.</u>, the court held that for weekly wage employees regularly working over 40 hours per week, where the employment agreement does not specify how many hours the weekly salary is intended to cover, the weekly salary should be presumed to cover only the first 40 hours.  <u>Id.</u> (citing <u>Aguilar v. E-Z Supply Corp.</u>, 2008 WL 905224, at *3 (E.D.N.Y. Mar. 31, 2008) (holding that under the FLSA, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours")).  In <u>Said</u>, plaintiff was paid the same salary each week and the court determined that there was a rebuttable presumption that the weekly salary covered only 40 hours because plaintiff's weekly compensation was intended to compensate him for a specific number of hours worked.  <u>Id.</u> at *7.

Courts in this circuit, and other circuits have held that for piece-rate employees, the regular

23

rate is determined by adding together the employee's total weekly earnings from piece rates, as well as other sources, and dividing the sum by the number of hours in the week "for which the compensation was paid," and that "the regulations to the FLSA specifically contemplate payments, to employees paid on a piece rate basis, of overtime – an additional one half of their 'regular rate'– for any hours worked exceeding 40 in one week." Johnson v. Wave Comm GR LLC, No. 610 CV 346, 2011 WL 13134625, at *6 (N.D.N.Y. Sept. 27, 2011); see Tomeo v. W&E Commc'ns, Inc., No. 14 C 2431, 2016 WL 8711483, at *9 (N.D. Ill. Sept. 30, 2016) (citing Walling v. Harnischfeger Corp., 325 U.S. 427, 432 (1945) (holding that "where the facts do not permit it, we cannot arbitrarily divide bonuses or piece work wages into regular and overtime segments")).   The regular hourly rate must be determined based on a plaintiff's employment contract and "'[i]n the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record.'"   35 Chopen v. Olive Vine, Inc., No. 12 CV 2269, 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015) (quoting Moon v. Kwon, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002)).

        Here, plaintiff argues that her weekly pay should only be divided by 40 hours to determine her regular rate of pay because she alleges that defendants told her she was a "40 hour per week worker" and that defendants "made it clear that Plaintiff was not, and would not be, paid for more than 40 hours per week."  (Pl.'s 56.1 Stmnt ¶ 33(a)).  Defendants argue that if plaintiff's method were to be used to calculate overtime wages owed, plaintiff would receive a windfall because she would be receiving an amount in overtime wages exceeding one and one-half times her regular rate of pay based on her hours actually worked.  (Defs.' Mem. at 22).  Defendants argue that plaintiff admitted that, although she should have been paid at a higher rate for hours worked above 40, she

had agreed with her employer that her piecework wages were to cover all of her work for the week and therefore, her regular rate of pay should be determined using all the hours she is found to have worked in a given workweek.  (Defs.' Mem. at 20).  However, when plaintiff was asked during her deposition whether her gross pay for a particular piece was "regardless of how many hours it took to do the work," plaintiff responded that "the amount of money that was calculated for a piece was calculated out of 40 hours of work."  (Pest Dep. at 37).  In her deposition, Defendant Bach stated that the prices of the tickets that were attached to each garment were based on the amount of time plaintiff represented that she needed for completing a particular garment.[16]  (Bach Dep. at 109-10).  Both plaintiff and defendant Bach's deposition testimony suggest that the number of hours for which plaintiff was paid was based on plaintiff's estimation of how long it would take her to complete the garments she was working on for a particular week, and that the number of garments plaintiff was given to work on was, based on these estimations, calculated to give her 40 hours of work each week.

Furthermore, defendants have not put forth any evidence to indicate that they paid plaintiff for all the hours she actually worked, and the testimony of defendant Bach and foreperson Leja do not dispute that plaintiff was paid for exactly 40 hours of work per week.  (Bach Dep. at 105, Leja Dep. at 42).  Although defendants consistently argue that plaintiff only worked 40 hours a week

---

[16]Defendants provided copies of some of the tags that were attached to the garments which plaintiff allegedly worked on; in her deposition, defendant Bach explained that the tag included a description of the garment part plaintiff was sewing, a ticket number for each tag generated, the order number, and, at the bottom of the ticket, a price that represents the amount that would be paid to plaintiff for working on that garment, next to which plaintiff and plaintiff's supervisor on a particular day would write their initials.  (Pest Dep. at 108-112; Ex. 5 at 7).  On some tags, it appears that the price was handwritten (Pest Dep., Ex. 5 at 9) and on others, they are printed.  (Pest Dep., Ex. 5 at 7).  It does not appear, however, that the tags include the amount of time plaintiff believed she needed to work on a particular garment.

25

and that her weekly paycheck was only intended to cover 40 hours a week, they simultaneously argue that if she is found to have worked above 40 hours in some weeks, then her weekly pay should be divided by more than 40 hours a week. This method would give defendants the windfall by reducing plaintiff's regular rate of pay and the amount she would be owed in overtime wages, should she be found to have worked more than 40 hours in a week.

Since there is no written contract indicating the parties' intent in compensating plaintiff for a given number of hours, the Court finds that the testimonial evidence indicates that plaintiff was intended to be paid for only 40 hours of work per week. See 35 Chopen v. Olive Vine, Inc., 2015 WL 1514390, at *6; Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., No. 14 CV 5269, 2016 WL 5092588, at *23 (E.D.N.Y. Sept. 19, 2016) (citing Zurita v. High Definition Fitness Ctr., Inc., No. 13-CV-4394, 2016 WL 3619527, at *5 (E.D.N.Y. June 9, 2016)) (in which the court determined, after hearing testimony from plaintiffs and defendants, that there was an implicit agreement that for certain periods, plaintiffs would work more than 40 hours for their weekly salary). The evidence presented indicates clearly that plaintiff and defendants agreed that plaintiff's weekly salary would cover no more than 40 hours of work per week. Therefore, to determine plaintiff's regular rate of pay, the sum of her weekly paycheck should be divided by 40 hours per week, since these are the number of hours "for which such compensation was paid." 29 C.F.R. § 778.111(a).

Accordingly, the Court has determined that, pursuant to 29 C.F.R. § 778.111(a), the appropriate method for determining plaintiff's regular rate of pay would be to divide plaintiff's weekly salary by 40 hours per week. If, however, plaintiff is found to have worked more than 40 hours in any given week, then she would be owed overtime calculated at the rate of one and one-half times her regular rate of pay for all hours worked above 40 hours in a given week.

IV.  Statute of Limitations

Defendants argue that even if they are not granted summary judgment on all of plaintiff's

claims, summary judgment should be granted to bar plaintiff's claims arising before March 29,

2010 as beyond the statute of limitations for FLSA and NYLL claims.  (Defs.' Mem. at 12).

Defendants argue that, since plaintiff seeks overtime wages for the entirety of her employment at

Bridal Works from June 2000 to May 2014 and since she filed her Complaint on March 29,

2016, her claims for the period before March 29, 2010 should be barred by the statutes of

limitations under the FLSA and NYLL.  (Id.)

Plaintiff argues that the statute of limitations should be equitably tolled to allow her to

bring claims earlier than three years prior to the Complaint due to defendants' failure to inform

her as to her right to be paid overtime wages.  (Pls.' Mem. at 10).  In response, defendants argue

that the statute of limitations should not be equitably tolled because not only is plaintiff's lack of

knowledge as to her right to overtime wages insufficient to toll the statue of limitations, but

defendants have fulfilled all of their necessary obligations under the FLSA and NYLL.  (Defs.'

Reply at 10).

The statute of limitations under the FLSA is generally two years, but extends to three

years for willful violations:  "every such action shall be forever barred unless commenced within

two years after the cause of action accrued, except that a cause of action arising out of a willful

violation may be commenced within three years after the cause of action accrued."  29 U.S.C.

§ 255(a); see Guardado v. 13 Wall St., Inc., No. 15 CV 02482 , 2016 WL 7480358, at *5

(E.D.N.Y. Dec. 2, 2016), report and recommendation adopted, 2016 WL 7480363 (E.D.N.Y.

Dec. 29, 2016).  Under the FLSA, the plaintiff bears the burden of proving willfulness for the

purposes of expanding the statute of limitations to three years, and "[a]ll that is required is that the employer knew or had reason to know that it was or might have been subject to the FLSA." See Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014).  Courts have held that the standard for determining willful behavior is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."   Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (holding modified by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).

An employer's claim that it believed that an employee was exempt from the requirements of the FLSA based on the non-hourly rates of pay of its employees has been held to be insufficient on its own to show that the employer's belief was a reasonable one.  In D'Arpa v. Runway Towing Corp., the defendants "assert[ed] in conclusory fashion that 'the Court should apply the two year limitations period . . . because the defendants had a reasonable belief that they were exempt from the FLSA because they were engaged in both interstate [and] intrastate commerce and their actions were not willful.'"  No. 12 CV 1120, 2013 WL 3010810, at *5 (E.D.N.Y. June 18, 2013).  The court rejected that argument, holding that "Defendants are not exempt from the FLSA, nor does the record contain any evidence that would permit them to reasonably believe they were exempt."  Id. (internal citations omitted).  In addition, employers who have paid employees in cash and erratically issued W-2s have been found to have willfully violated the FLSA.  Id. (granting summary judgment and holding that the three-year statute of limitations applied under the FLSA since "defendants' method of compensating nearly all of the Plaintiffs in cash and their arbitrary issuance of W-2s leads me to conclude, as a matter of law,

28

that Defendants acted willfully").

Here, plaintiff argues that the three-year statute of limitations for violations of the FLSA should apply because defendants' actions of "systemic time-card manipulation" (Compl. ¶ 38; Pl.'s 56.1 Stmnt ¶ 18(a)) and their awareness that plaintiff usually worked more than 40 hours per week without receiving overtime compensation for that work (id. ¶ 42; Defs.' 56.1 Stmnt ¶ 18) demonstrate that their FLSA violations were willful.  (Pls.' Mem. at 10).  Defendants deny plaintiff's allegations that they manipulated her time cards and knowingly denied plaintiff compensation for any overtime hours she may have worked.  (Answer ¶¶ 38, 42; Defs.' 56.1 Stmnt ¶ 32-33).  At this stage, the Court finds that there are significant issues of fact as to whether plaintiff is owed overtime wages and whether defendants acted willfully in failing to pay plaintiff any overtime wages she is owed.  Thus, the Court is not in a position to determine whether to extend the FLSA statute of limitations to three years.

However, in contrast to FLSA claims, NYLL claims have a six-year statute of limitations and do not require a showing of willfulness from plaintiffs bringing NYLL claims for unpaid wages.  Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 278 (E.D.N.Y. 2015); Gurung v. Malhotra, 851 F. Supp. 2d 583, 591 (S.D.N.Y. 2012) (holding that, "the statute of limitations for NYLL claims—willful or not—is six years").  Here, since plaintiff brings her claims under both the NYLL and FLSA, her overtime wage claims pursuant to the NYLL extend back six years prior to the filing of her Complaint, from March 29, 2010 to March 29, 2016, even if she is unable to prove willfulness for the purposes of the FLSA statute of limitations.

Defendants argue that even if their actions were found to be willful as required to extend the statute of limitations to three years, plaintiff has not made the showing necessary to justify

equitable tolling of the statute of limitations beyond the three-year period for FLSA claims and the six-year period for NYLL claims. (Defs.' Mem. at 13). Defendants argue that they have provided photos showing wage and hour notices posted at their workplace and therefore, plaintiff had sufficient notice of her employment rights. (Korder Decl., Ex. E at 311-314). Plaintiff argues that she had no knowledge of her wage and hour rights because defendants did not place wage notices "on the wall of the lunchroom or any other area where Plaintiff could have been expected to see a poster" and that at any rate, she could not understand the posters because they were not in English. (Pl.'s Mem. at 11). Plaintiff also argues that defendants actively concealed from plaintiff her wage and hour rights by "falsely telling her she couldn't be clocked in more than 40 hours because she was a '40-hour-a-week' worker. (Id. at 10).

 "It is within the ambit of the court to resolve questions of equity, including the applicability of equitable tolling to statutes of limitations, when such factual questions are separate from the merits of the case." Lama v. Malik, 192 F. Supp. 3d 313, 316 (E.D.N.Y. 2016) (citing Upadhyay v. Sethi, 848 F. Supp. 2d 439, 446, 447 (S.D.N.Y. 2012)). A claim that is barred by the statute of limitations may proceed if a court finds that the limitations period should be equitably tolled. "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." Veltri v. Bldg. Serv. 32B–J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004).

To qualify for equitable tolling, a plaintiff must demonstrate: "(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007).

30

"[F]ederal district courts apply the same standard for equitable tolling of [NYLL] claims as for tolling FLSA claims." Ramirez v. Rifkin, 568 F.Supp.2d 262, 273 (E.D.N.Y. 2008).   In Shu Qin Xu v. Wai Mei Ho, the court found that an employer's failure to post notices or provide plaintiff with statements of hours and wages was insufficient to qualify plaintiff's wage and hour claims for equitable tolling.  111 F. Supp. 3d at 279.  Thus, even if an employer fails to post notices explaining the FLSA's wage and hour requirements, to qualify for equitable tolling of her claims, a plaintiff must show that she has not received notice of her rights through other means. Upadhyay v. Sethi, 848 F. Supp. 2d at 445.

Here, there are issues of fact revolving around the question of whether defendants failed to place notices informing plaintiff of her wage and hour rights, which might be resolved through evidence presented at trial.  Plaintiff cites to Kim v. Kum Gang Inc., No. 12 CV 6344, 2015 WL 2222438 (S.D.N.Y. Mar. 19, 2015), for its holding that equitable tolling was justified where the required wage and hour notices "were not displayed in appropriate places and languages." However, other courts in this circuit have held that failure to post notices alone is insufficient to justify equitable tolling and that holdings like the one in Kim v. Kum Gang Inc. are "contrary to Second Circuit and Supreme Court caselaw on what constitutes extraordinary circumstances, and they seem to entirely ignore the reasonable diligence prong of the equitable tolling test." Zhongwei Zhou v. Wu, No. 14 CV 1775, 2017 WL 1233994, at *4 n.3 (S.D.N.Y. Mar. 31, 2017) (citing Kim v. Kum Gang Inc., 2015 WL 2222438, at 36-39); see Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d at 279.

Here, plaintiff has not indicated what efforts she took to understand her rights, such as asking another employee or a supervisor to translate the posters into Polish in order to show that

31

she was "reasonably diligent" in pursuing her wage and hour rights.  See Lama v. Malik, 192 F.

Supp. 3d at 318 (holding that "[e]quitable tolling requires the party seeking the toll to show that

she was reasonably diligent in pursuing her rights").

However, since the Court has declined to grant summary judgment on the issues of

overtime wages and whether defendants acted willfully in failing to pay plaintiff any overtime

wages she is owed, the Court finds that it would be appropriate to deny summary judgment on

the issue of whether equitable tolling of plaintiff's pre-2010 claims is warranted pending the

presentation of any evidence that may arise during trial that would be relevant to making this

determination.

V.  Wage Notice Violations

In her Complaint, plaintiff sought damages based on alleged violations of the wage notice

provisions of Section 195(1) and Section 195(3) of the NYLL.

1) Section 195(1) Wage Notices

Plaintiff alleged in her Complaint that defendants failed to provide her with notice at the

time of hiring and on or before February 1st of each subsequent year of her employment with a

notice containing her rate of pay, method of pay, and any allowances in violation of Section

195(1).  (Compl. ¶ 71).  However, in her Memorandum, plaintiff states that she has reason to

believe that her Section 195(1) claims were subject to dismissal based on defendants' argument

that because Section 195(1) became effective on April 9, 2011, and because it pertains to the

notice an employer must provide an employee on their first day of employment, an employee who

was hired before April 9, 2011 cannot bring a wage notice claim pursuant to this section.  (Pl.'s

Mem. at 16; Defs.' Mem. at 26 (citing Zurity v. High Definition Fitness Ctr., Inc., 13 CV 4394,

2016 WL 3619527, at *8 (E.D.N.Y. June 9, 2016))).

Prior to the 2015 amendments, Section 195(1)(a) of the NYLL required that every

employer provide his or her employees, at the time of hiring and on or before February 1st of

each subsequent year of the employee's employment, with a notice containing the following

information:  the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including

tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance

with Section 191; the name of the employer; any "doing business as" names used by the

employer; the physical address of the employer's main office or principal place of business, as

well as a mailing address if different; the telephone number of the employer; plus such other

information as the commissioner deems material and necessary.  N.Y. Lab. Law § 195(1)(a)

(effective April 9, 2011).  However, the 2015 amendments eliminated the annual notice

requirement and mandated that an employer only provide such notice "at the time of hiring" and

not for subsequent years.  N.Y. Lab. Law § 195(1)(a) (effective December 29, 2014).  Thus,

plaintiff would not be entitled to receive wage notice damages pursuant to the 2015 amendments

to Section 195(1), but she might be entitled to wage notice damages under Section 195(1) for her

employment from April 9, 2011 to December 28, 2014.

Since plaintiff has agreed to withdraw her claims entirely under Section 195(1), however,

the Court deems her Section 195(1) claims to be voluntarily withdrawn.

2) Section 195(3) Pay Stubs

Plaintiff also alleges that defendants failed to provide pay stubs that complied with

Section 195(3) in that they failed to contain information on plaintiff's rate of pay, overtime rate of pay, and overtime hours worked.  (Compl. ¶ 72).  Plaintiff argues that defendants' pay stubs did not explain how plaintiff's pay was computed and allegedly falsified the number of hours worked, in violation of Section 195(3).  (Pl.'s Mem. at 17).  Defendants argue that plaintiff's claims under Section 195(3) should be dismissed because the pay stubs produced include all the information required by Section 195(3) except for the information about overtime wages because defendants allege that she did not work overtime.  (Defs.' Mem. at 26).

Section 195(3) requires that every employer provide his or her employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. L. § 195(3).

The copies of the pay stubs defendants have provided show plaintiff's name, the dates of the workweek covered by that payment of wages, the name of defendants' place of business, and a copy of the time card for the week; they also list "piecework" under the "Earnings and Hours" section.  Under the "Quantity" section, "40" is listed and the amount being taken out of plaintiff's pay for taxes is also listed.  (Pest Dep., Ex. B).  It is unclear whether the amount listed under "Quantity" represents the number of hours plaintiff worked in the workweek or the number of pieces plaintiff worked on each week.  Defendant Bach testified during her deposition that the amount listed under "QTY" in plaintiff's pay stubs indicated 40 hours of work.  (Bach Dep. at 105).  Foreperson Jolanta Leja also testified that "[t]he entire premise of work was that we work forty hours a week."  (Leja Dep. at 42).  However, neither plaintiff nor defendants dispute that

plaintiff was a pieceworker and defendants cannot explain why, instead of specifying the quantity of items plaintiff worked on each week to determine her weekly pay, the pay stubs would specify the number of hours she worked.  Thus, it is unclear at this time whether the pay stubs have sufficiently specified the method of pay so as to satisfy Section 195(3).

Plaintiff also cites to Copper v. Cavalry Staffing, LLC, in which the Court cited the legislative history of the Wage Theft Prevention Act and observed that "[t]he legislators were concerned that '[m]any employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend.'"  132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015).  Here, although plaintiff does not dispute that she was aware that the wages were calculated on a piecework basis and that she was paid based on the tags that were displayed on the garments she worked on (Pest Dep. at 43), as indicated supra, the Court finds that her pay stubs as interpreted by the witnesses appear to suggest a different method of payment and do not clearly indicate her rate of pay or overtime rate based on the quantity of work she performed.  Defendants contend that the quantity term in plaintiff's pay stubs represent plaintiff's hours worked (Bach Dep. at 105), since plaintiff informed them of the amount of time she needed to complete a particular garment and based on these estimates, defendants provided her with garments that would require not more than forty hours of work in total.  (Bach Dep. at 109-10).  However, defendants' explanation of how they tailored plaintiff's piecework to produce an exact 40-hour workweek raises a multitude of factual issues – namely, how accurate plaintiff's estimates turned out to be and what action defendants took in the event that plaintiff required more or less time to work on a garment than she had initially estimated.

35

As for any potential language barrier, on April 9, 2011, Section 195(1) was amended to add a subsection (a), which provides that an employer must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee" the notice outlined under subsection (a).  NYLL § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3 (effective Apr. 9, 2011) (amended by 2014 N.Y. Laws ch. 537 § 1).  However, there is no comparable language requirement for the periodic pay statements required under Section 195(3).  Thus, there is no basis at this time for the Court to hold that defendants violated Section 195(3) by failing to translate the wage statements into plaintiff's native language.

Even so, since it is still a disputed issue of fact as to whether plaintiff worked overtime and whether her pay stubs accurately indicated her method of pay, the Court reserves decision on whether defendants have violated Section 195(3) by failing to note plaintiff's overtime hours and pay rate or by failing to accurately indicate plaintiff's method of pay on her pay stubs.


VI.  <u>Liquidated Damages under the FLSA and NYLL</u>

Defendants argue that plaintiff cannot recover liquidated damages pursuant to both the FLSA and the NYLL for the same period of time for which she is awarded damages.  (Defs.' Mem. at 22).  Although plaintiff initially sought liquidated damages under both the FLSA and the NYLL (Compl. at 21), plaintiff acknowledges in her response in opposition to the summary judgment motion that cumulative liquidated damages are no longer available under both the FLSA and NYLL.  (Pl.'s Mem. at 16).

In a Summary Order issued on December 7, 2016, the Second Circuit interpreted the NYLL to preclude the recovery of double liquidated damages under both the NYLL and FLSA.

Chowdhury v. Hamza Express Food Corp., No. 15 CV 3142, 2016 WL 7131854, at *2 (2d Cir.

Dec. 7, 2016).  The court stated that:

> whatever reasons existed to award liquidated damages under the
> relevant provisions of both the FLSA and the NYLL before 2010, we
> read the subsequent amendments to the NYLL provision, which
> brought it into substantial conformity with the FLSA provision, as
> having eliminated those reasons.  Today the NYLL and FLSA
> liquidated damages provisions are identical in all material respects,
> serve the same functions, and redress the same injuries.  In the
> absence of any indication otherwise, we interpret the New York
> statute's provision for liquidated damages as satisfied by a similar
> award of liquidated damages under the federal statute.

Id.  Courts in this circuit have since relied on the Second Circuit's Summary Order to disfavor an

overlapping award of liquidated damages under both the FLSA and the NYLL for the same

period of time.  See Changxing Li et al. v. Kai Xiang Dong et al., No. 15 CV 7554, 2017 WL

892611, at *14 (S.D.N.Y. Mar. 7, 2017) (holding that "in keeping with the Second Circuit's

Chowdhury decision, the 'prevailing view' of district court decisions in this Circuit, as well as

this Court's previous rulings that plaintiffs should not be awarded liquidated damages under both

the FLSA and the NYLL for the same time period, plaintiffs are entitled to single liquidated

damages at the state statutory rate of 100% on their minimum, overtime, and spread of hour wage

claims"); Luna v. Gon Way Constr., Inc., No. 16 CV 1411, 2017 WL 835321, at *15 (E.D.N.Y.

Feb. 14, 2017), report and recommendation adopted, No. 16 CV 1411, 2017 WL 835174

(E.D.N.Y. Mar. 2, 2017) (recommending that "the District Court find that Plaintiffs are permitted

to recover liquidated damages for unpaid wages and unpaid overtime under the greater of the

FLSA or NYLL"); Granados v. Traffic Bar & Rest., Inc., No. 13 CV 0500, 2016 WL 7410725, at

*4 (S.D.N.Y. Dec. 21, 2016) (recommending that the district judge "follow[ ] Chowdhury's

teaching in this instance and disallow[ ] 'stacked' liquidated damages for unpaid wages accrued

after April 9, 2011").

If plaintiff were to be awarded damages under the FLSA and the NYLL for an overlapping period of time, she would only be entitled to liquidated damages under the statute that provides for the greater award for that overlapping period.

CONCLUSION

For the reasons set forth herein, the Court denies defendants' motion for summary judgment in its entirety with the exception of the motion to dismiss plaintiff's pre-2004 claims against defendant Bach, which plaintiff has conceded should be dismissed.

The Court denies defendants' motion for summary judgment on plaintiff's overtime wage claims due to a significant number of disputed issues of material fact over whether plaintiff worked more than 40 hours per week during her employment at Bridal Works.

The Court also denies defendants' motion for summary judgment on defendants' proposed method for determining overtime wages owed to plaintiff, finding that there is sufficient evidence to indicate that plaintiff's weekly pay was intended to compensate her for only 40 hours a week.  Therefore, the Court finds that the appropriate method for determining plaintiff's regular rate of pay pursuant to 29 C.F.R. § 778.111(a) is to divide the amount of her weekly salary by 40 hours, the number of hours for which her weekly compensation was paid, rather than to divide her weekly salary by the number of hours that she is found to have actually worked in a given week.

The Court deems plaintiff's NYLL Section 195(1) claims voluntarily withdrawn.  The Court denies defendants' motion for summary judgment on plaintiff's Section 195(3) claims,

since the issues regarding the methodology of plaintiff's pay and whether plaintiff worked

overtime remain unresolved and therefore, any deficiencies on her wage statements relating to

pay rate and overtime hours worked cannot be determined at this stage.  Finally, the Court denies

defendants' motion for summary judgment on whether plaintiff has met the showing necessary to

justify the equitable tolling of her claims under the FLSA and NYLL.

Accordingly, a status conference has been set for **August 25, 2017 at 12:30 p.m.** to

discuss any remaining discovery.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED.**

Dated: Brooklyn, New York
       July 27, 2017

                                   /s/ Cheryl L. Pollak
                                   _____
                                   Cheryl L. Pollak
                                   United States Magistrate Judge
                                   Eastern District of New York


39